**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JESSICA RANSOM,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 18-00411-B** |
| | * | |
| **ANDREW M. SAUL,** | * | |
| **Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

## ORDER

Plaintiff Jessica Ransom (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On October 28, 2019, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 16). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

# I.    <u>Procedural History</u>[1]

Plaintiff filed her application for benefits on March 20, 2015.  (Doc. 9-5 at 2).  Plaintiff alleges that she has been disabled since November 26, 2007, due to diabetes, rheumatoid arthritis, and neuropathy.  (Doc. 9-6 at 2, 7).

Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Thomas M. Muth, II (hereinafter "ALJ") on November 4, 2016.  (Doc. 9-2 at 61).  Plaintiff attended the hearing with her counsel and provided testimony related to her claims.  (Id. at 66).  Plaintiff was granted a supplemental administrative hearing before Administrative Law Judge Muth on September 25, 2017.  (Id. at 31).  Plaintiff attended the supplemental hearing with her counsel and provided testimony related to her claims.  (Id. at 35).  In addition, a vocational expert ("VE") and a medical expert ("ME") appeared at the supplemental hearing and provided testimony.  (Id. at 45, 51).  On January 31, 2018, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 16).  The Appeals Council denied Plaintiff's request for review on July 27, 2018.  (Id. at 2).  Therefore, the ALJ's decision dated January 31, 2018, became the final decision of the

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted in this case on October 28, 2019. (Doc. 15). This case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. **Issues on Appeal**

> 1. **Whether substantial evidence supports the ALJ's assignment of weight to the opinion evidence in this case?**
>
> 2. **Whether substantial evidence supports the Residual Functional Capacity ("RFC")?**

## III. **Factual Background**

Plaintiff was born on May 19, 1993, and was twenty-four years of age at the time of her supplemental administrative hearing on September 25, 2017. (Doc. 9-2 at 35; Doc. 9-6 at 2). Plaintiff completed the twelfth grade in high school. (Doc. 9-2 at 35). She has never worked. (Id. at 35).

At her hearing, Plaintiff testified that she cannot work because she cannot do things such as open a bottle or squat down and get back up. (Doc. 9-2 at 67-68). Plaintiff testified that she has problems with hand and leg pain and that she can only walk for twenty minutes before needing to lie down and rest. (Id. at 68). She experiences some tingling in her hands "every now and then." (Id. at 75). On the day of the hearing, Plaintiff

testified that her pain was a four on a ten-point pain scale. (Id. at 69). She takes Norco for pain, and it helps, with no side effects. (Id. at 69, 73). Plaintiff also takes insulin for diabetes, which has improved her symptoms. (Id. at 41, 74-75).

## IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**V.     Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.  20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must

proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. See Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI. Discussion**

> **A. Substantial evidence supports the ALJ's assignment of weight to the opinions of Plaintiff's treating physician, the consultative examiner, and the medical expert in this case.**

In her brief, Plaintiff argues that the ALJ erred in assigning little weight to the opinions of her treating physician, Dr. Cecil Parker, M.D., and consultative neurologist, Dr. Rassan Tarabein, M.D., while assigning substantial weight to the opinions of non-examining medical expert, Dr. Deborah Pollack, M.D. (Doc. 10 at 2). Plaintiff maintains that the ALJ erroneously concluded that Dr. Parker's and Dr. Tarabein's expert opinions were inconsistent with the substantial medical evidence in the case. (Id.). Plaintiff further argues that even the medical expert, Dr. Pollack, a neurologist, noted that Plaintiff's complaints of pain were consistent with her diagnoses of diabetes mellitus and neuropathy and that uncontrolled diabetes would affect concentration, persistence, and pace. (Id.). Defendant counters that the ALJ assigned the proper weight to the opinion evidence in this case based on the consistency of the opinions with the objective medical evidence. (Id.). Having carefully reviewed the record, the Court finds that Plaintiff's claim is without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision,

the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). However, the opinion of "a one-time examining physician — or psychologist" is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d

580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In the instant case, the ALJ found that Plaintiff has the severe impairments of rheumatoid arthritis, lumbar radiculopathy, diabetes mellitus, polyneuropathy, asthma, and chronic pain syndrome. (Doc. 9-2 at 18). The ALJ also determined that Plaintiff has the RFC to perform a range of sedentary work with the following restrictions: Plaintiff can lift and/or carry 10 pounds occasionally and items of negligible weight frequently. She can stand and/or walk two hours, no more than 30 minutes at a time. She can sit six hours, no more than one hour at a time.

She can perform occasional pushing and/or pulling with the upper extremities, bilaterally, and occasional pushing and/or pulling with the lower extremities, bilaterally. She can perform occasional balancing, occasional stooping, occasional kneeling, occasional crouching, occasional crawling, and occasional climbing of ramps and stairs. She can perform no climbing of ladders, ropes or scaffolds. She can perform frequent reaching, bilaterally; occasional handling, bilaterally; occasional fingering, bilaterally; and frequent feeling, bilaterally. She can tolerate occasional exposure to vibration. She must avoid all exposure to pulmonary irritants, avoid all exposure to unprotected heights, and avoid all exposure to dangerous machinery. She can sustain attention for two-hour periods with customary breaks. (Doc. 9-2 at 20).

The ALJ also found that Plaintiff has no past relevant work. (Id. at 25). Utilizing the testimony of the vocational expert, the ALJ concluded that Plaintiff can perform work such as surveillance systems monitor and call out operator (both sedentary and unskilled). (Id. at 25-26). Thus, the ALJ found that Plaintiff is not disabled. Having reviewed the evidence at length, the Court is satisfied that the ALJ's findings related to the weight assigned to the opinions of Plaintiff's treating physician, the consultative examiner, and the non-examining medical expert are supported by substantial evidence.

First, with respect to Plaintiff's treating physician, Dr. Parker, the record shows that, on May 10, 2016, Dr. Parker completed a Food Stamp form. On the form, he opined that Plaintiff's juvenile rheumatoid arthritis and diabetes mellitus, Type II, prevent her from being able to work and that her condition is lifelong and permanent. (Doc. 9-7 at 61). In addition, on August 24, 2016, Dr. Parker completed another medical questionnaire form. On the second form, Dr. Parker opined that Plaintiff has juvenile rheumatoid arthritis and diabetes mellitus, Type II, which cause her to experience chronic pain involving her hands, feet, back, arms, and legs. (Doc. 9-7 at 63). Dr. Parker also opined that physical activity would increase her symptoms to such an extent that bed rest would be necessary and that Plaintiff needs "the disease-modifying antirheumatic drug (DMAD)" to prevent "active destruction of her joint[s] due to rheumatoid arthritis." (Id.). Dr. Parker further opined that Plaintiff cannot engage in any form of gainful employment, that she will experience weekly absences due to persistent pain in her extremities, and that she is not physically capable of working due to her physical pain and the need for specialty care by a rheumatologist. (Id.).

The ALJ accorded little weight to Dr. Parker's opinions. He found that Dr. Parker's opinions in the May 2016 and the August 2016 questionnaire forms were inconsistent with the substantial medical evidence, including Dr. Parker's own treatment records.

11

(Doc. 9-2 at 24). Specifically, the record shows that Dr. Parker treated Plaintiff from 2014 to June 2017 for various ailments, including rheumatoid arthritis, chronic pain in back, legs, and feet, lumbar radiculopathy, hyperglycemia, and asthma.[3] (Doc. 9-2 at 33-35; Doc. 9-7 at 61-81, 106-119). While there is no question that Plaintiff has been diagnosed with, and treated for, these medical conditions, Dr. Parker's treatment records reflect largely conservative treatment of these conditions with medication. (Doc. 9-7 at 24-41, 65-82, 106-118). Further, Dr. Parker's treatment notes indicate that Plaintiff was largely stable on her medication regimen,[4] without negative side effects.[5] (Doc. 9-7 at 21, 23). Indeed, Dr. Parker's treatment notes from 2014 to 2017, including the most recent visit on June 30, 2017, frequently document normal

---

[3] Dr. Parker's partner, Dr. Rabin Shrestha, M.D., also treated Plaintiff. (Doc. 9-7 at 21). Therefore, Dr. Shrestha's treatment notes are included in the discussion of Dr. Parker's treatment of Plaintiff.

[4] With respect to Plaintiff's diabetes, the treatment notes reflect that on March 30, 2015, Plaintiff's blood sugar "mostly appears good." (Doc. 9-7 at 23). On April 21, 2015, Dr. Shrestha noted, "Ms. Ransom comes in today for the follow up of multiple medical problems including the chronic pain. [Patient] mentions that there are good and bad days. In most part [patient] has been stable on the current pain regimen." (Doc. 9-7 at 21). The treatment notes further reflect that, on April 25, 2015, Plaintiff's sister reported to Dr. Shrestha that Plaintiff's blood sugar had been "running very good." (Doc. 9-7 at 21).

[5] Plaintiff testified that she has no side effects with her medication. (Doc. 9-2 at 73).

examination findings, including no clubbing, no cyanosis, no edema, normal strength, normal tone, normal reflexes, normal neurologic examination, spine non-tender to palpation, and no acute distress, as well as Plaintiff's denials of painful or swollen joints, pain/cramping in legs after exertion, gait abnormality, tingling/numbness, or weakness. (Id. at 24-41, 65-82, 106-118). Interestingly, on August 24, 2016, the same date that Dr. Parker opined that Plaintiff was physically incapable of working, his own physical examination of Plaintiff on said date showed no abnormalities, no acute distress, normal back including nontender spine, normal extremities including no clubbing, no cyanosis, no edema and normal neurologic examination including normal strength, normal muscle tone, and normal reflexes. In addition, Plaintiff denied painful joints or weakness, with the exception of hand pain for one week. (Id. at 64-65). This evidence is wholly inconsistent with the severe limitations expressed by Dr. Parker in the questionnaire forms he completed in May and August 2016. Therefore, the ALJ had good cause to discredit those opinions.

In addition, the record shows that, on January 27, 2017, Plaintiff was examined by consultative neurologist, Dr. Rassan M. Tarabein, M.D. (Doc. 9-7 at 86-89). Plaintiff reported to Dr. Tarabein that she is unable to work because of leg pain when she stands for long periods of time and because of tenderness in her

low back and tingling in her hands and feet. (Doc. 9-7 at 86-87). At her examination, Plaintiff complained of "joint" pain but denied "SI joint" pain, knee pain, hip pain, ankle pain, neck pain, shoulder pain, or swelling and stated that her back pain was "chronic" but "improving," and that her neck pain and myalgias were "intermittent" and "improving." (Id.).

Dr. Tarabein's physical examination resulted in largely normal musculoskeletal examination findings, namely, 4/5 muscle strength in hand grip muscles and ankles and otherwise 5/5 strength throughout; normal bulk and tone, with no fasciculation, no atrophy, no spasms; and normal reflexes. (Id. at 88-89). An EMG/NCS study of the upper and lower extremities revealed mild to moderate L4-L5 radiculitis, neuropathy (most likely caused by diabetes), and "reduced CAMP's" in lower extremities (consistent with diabetic polyneuropathy with secondary early stage myopathy). (Id. at 89-90).

Dr. Tarabein opined that Plaintiff's functional capacity restrictions "seem[] to be too significant to be engaged in any meaningful or gainful employment without the possibility of posing harm to self and/or to others. [P]atient seems to be permanently disabled." (Doc. 9-7 at 90). In addition, Dr. Tarabein completed a MSS form. Dr. Tarabein opined that Plaintiff could lift/carry twenty pounds frequently and fifty pounds occasionally, that she could sit for a total of four hours, stand for three hours, and

walk for two hours, and that she could occasionally use both hands for reaching, handling, fingering, feeling, and to push/pull, as well as use her feet occasionally to operate foot controls. (Id. at 97-104). In addition, he opined that Plaintiff could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. (Id. at 100). Dr. Tarabein further opined that Plaintiff's gait was within normal limits and that she did not need, nor had she ever used, an assistive device to walk. (Id. at 85).

The ALJ accorded little weight to Dr. Tarabein's opinion that Plaintiff could not engage in any form of meaningful or gainful employment because the opinion was inconsistent with Dr. Tarabein's own physical examination findings, as well as with the largely normal musculoskeletal and neurological examination findings detailed in Dr. Parker's treatment records and in Plaintiff's treatment records as a whole. (Doc. 9-2 at 24). As the ALJ found, the severity of the limitations expressed in Dr. Tarabein's opinions are inconsistent with his own examination findings, his contemporaneous opinion that Plaintiff has no need for an assistive device because her gait is within normal limits, and Plaintiff's overall treatment records, as detailed herein. Therefore, the ALJ had good cause to discredit Dr. Tarabein's opinions regarding Plaintiff's ability to maintain employment.

In addition, as the ALJ found, the record reflects an absence

of recent emergency room visits or hospitalizations related to Plaintiff's diabetes, neuropathy, rheumatoid arthritis, lumbar radiculopathy, or chronic pain. (Doc. 9-2 at 24). Although Plaintiff presented to the emergency room in March 2015 with complaints of moderate low back pain and right leg pain, she reported that she was out of medication at that time. (Doc. 9-7 at 13-16). Plaintiff's physical examination findings on that date reflected lumbar and right leg tenderness with full range of motion. (Doc. 9-7 at 14). The emergency room physician assessed rheumatoid arthritis exacerbation and hyperglycemia and administered Norco for pain and insulin for diabetes. Following treatment, Plaintiff was noted to be stable and improved and was discharged. (Id. at 13-16). Medical personnel also determined that x-rays were "not clinically warranted" at that time. (Id. at 15). This evidence is likewise inconsistent with the severe limitations expressed in the opinions of Dr. Parker and Dr. Tarabein.

Last, the record shows that a medical expert, Dr. Debra Pollack, M.D., a Board Certified Neurologist and Psychologist, reviewed Plaintiff's medical records and testified at the administrative hearing. Dr. Pollack testified that Plaintiff has diabetes (which has been difficult to control),[6] mild neuropathy

---

[6] Dr. Pollack agreed with Plaintiff's counsel that widely fluctuating blood sugars can impair attention and that complaints

consistent with diabetes, some back pain consistent with her diagnosis of mild lumbar radiculopathy, and rheumatoid arthritis. Dr. Pollack opined that Plaintiff's conditions do not meet listing level and that her medical records do not support the conclusion that she cannot work. (Doc. 9-2 at 46-48). Specifically, Dr. Pollack pointed out that Plaintiff has had no physical therapy, nor has she been treated by any specialist, including a rheumatologist. (Doc. 9-2 at 24, 47-48). Dr. Pollack opined that, with physical therapy or neurological care, "she might be doing far better than she's doing right now." (Doc. 9-2 at 48). Dr. Pollack further opined that Plaintiff can stand for a total of two hours in an eight-hour work day (one hour at a time), can walk for one hour each day (thirty minutes at a time), and has no limitation with respect to sitting;[7] she can sustain attention for two-hour periods; and she can reach often, occasionally do handling, fine manipulation, and fingering, and can frequently push/pull with upper and lower extremities. (Doc. 9-2 at 48-49). The ALJ assigned Dr. Pollack's opinions substantial weight. The ALJ concluded that Dr. Pollack's opinions were partially consistent with the medical evidence in the case. The ALJ rejected Dr.

---

of foot pain would be consistent with mild peripheral neuropathy. (Doc. 9-2 at 50-51).

[7] With respect to sitting, Plaintiff testified that she has no difficulty sitting in a chair. (Doc. 9-2 at 37).

Pollack's opinion that Plaintiff's ability to sit was "unlimited" and that Plaintiff's diabetes has been difficult to control, given Plaintiff's testimony that her diabetes was under "better" control. (Doc. 9-2 at 41, 74).

Having reviewed the record at length, the Court finds that Dr. Pollack's functional assessments are generally consistent with the substantial medical evidence, set forth in detail above. Indeed, Plaintiff acknowledges that Dr. Pollack offered limitations similar to those of Dr. Tarabein, with the exception that Dr. Pollack opined that Plaintiff's sitting was unlimited and that she could sustain concentration, persistence, and pace for periods of two hours. (Doc. 10 at 5). Because Dr. Pollack's opinions are consistent with the substantial medical evidence in this case, as set forth in detail above, the ALJ did not err in according those opinions substantial weight. See Farrington v. Astrue, 2010 U.S. Dist. LEXIS 43732, *15, 2010 WL 1252684, *5 (M.D. Fla. Mar. 29, 2010) ("[A]n ALJ may rely upon testimony of a medical expert when evaluating the nature and extent of a claimant's impairments if it is consistent with the record evidence."); McCart v. Colvin, 2014 U.S. Dist. LEXIS 122548, *15, 2014 WL 4373285, *6 (M.D. Fla. Sept. 3, 2014)("[A]n ALJ may rely on a nonexamining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of a treating physician that is inconsistent with the evidence.").

Based on the foregoing, the Court finds that substantial evidence supports the weight assigned to the expert opinion evidence in this case. Therefore, Plaintiff's claim must fail.

> ### B. Substantial evidence supports the Residual Functional Capacity ("RFC") for less than the full range of sedentary work with the stated restrictions.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet her burden in this case.

As stated, Plaintiff argues that the ALJ'S RFC for a range of sedentary work is not supported by substantial evidence because the ALJ failed to assign proper weight to the expert opinion

evidence in this case.  Having found that substantial evidence supports the ALJ's assignment of weight to the expert opinion evidence in this case, that argument fails.

In addition, based on the medical evidence detailed above, which will not be repeated here, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform a range of sedentary work, with the stated restrictions. Plaintiff's treatment records, on the whole, reflect conservative treatment for her medical conditions and largely normal examination findings.  Indeed, Plaintiff has failed to show that any limitations caused by her impairments exceed the RFC and are not accommodated by the RFC and its stated restrictions.  For each of these reasons, Plaintiff's claim must fail.[8]

---

[8] Although Plaintiff has cited evidence in the record which she claims supports a finding that she is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").

## VII.  <u>Conclusion</u>

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **29th** day of **October, 2019.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
